# THE LAW OFFICE OF JEFF CHABROWE

261 Madison Avenue, 12th Floor New York, NY 10016 | Tel. 917.529.3921| F 212.736.3910

July 25, 2014

SENT VIA ECF

Honorable Laura T. Swain
United States District Court, SDNY
500 Pearl St.
New York, NY 10007

    Re: United States v. Aaron Hill, 12-CR-00507-001-LTS

Your Honor:

    On November 14, 2013, Aaron Hill pled guilty to one count each of violating 18 U.S.C. § 1349, Conspiracy to Commit Mail/Wire Fraud, and 18 U.S.C. § 1029(a)(3) and (b)(1), Access Device Fraud.  He is scheduled to be sentenced by this court on August 4, 2014.  I write now to provide your Honor with information that is relevant to your sentencing decision.  Specifically, we are requesting that Your Honor impose a below Guidelines sentence because of Mr. Hill's family circumstances, because the Guidelines range overstates the actual loss in this case and thus threatens to impose a sentence "greater than necessary" to achieve the goals of the federal sentencing statute, and because of Mr. Hill's positive history and character, as evidenced by his community involvement.

## STATEMENT OF THE DEFENDANT'S HISTORY

1. Aaron Maurice Hill (hereinafter "Mr. Hill") was born on April 2, 1975, in Brooklyn, NY.  Mr. Hill was raised by both of his parents until age six (6), when his parents separated.  Mr. Hill and his two younger siblings were thereafter raised by his mother, who worked as a home attendant.

2. When Mr. Hill was six years old, his father moved out of the house.  Mr. Hill subsequently saw his father "from time to time," and although Mr. Hill's father provided a certain amount of financial support, Mr. Hill's mother nevertheless subsequently struggled to provide Mr. Hill and his siblings with the basic necessities.

3. Mr. Hill has three daughters with his fiancée, Dyteer Gallishaw: Diyanna Hill, age 13; Naima Hill, age 7; and Gabrielle Hill, age 2.  Mr. Hill has lived with his children and fiancée for the last eleven (11) years at the same address, 216 Mason St., Apt. 8, Brooklyn, NY. Mr. Hill's seven year-old daughter, Naima, suffers from a condition that causes her to break out in rashes and causes severe itching.  At least once a month, Mr. Hill takes Naima to the doctor for treatment.  Each of Mr. Hill's three children, including Naima, are covered by Mr. Hill's health insurance.

4. Mr. Hill has maintained steady employment with the same company for nearly twenty (20) years, as he went to work for then NYNEX/New York Telephone as an "escort" for the company's field technicians.  In 1999, Mr. Hill became a field technician for the company, and has remained there to this day (the company is now Verizon Communications).

5. Mr. Hill currently suffers from a herniated disc in his back for which he undergoes a course of treatment consisting of muscle relaxers and physical therapy. Mr. Hill's doctors have indicated that he should undergo back surgery.

6. At the time of the instant offense, Mr. Hill and his family were under considerable financial strain, as they were behind in the rent as well as several other bills, such as power and gas.  Mr. Hill openly and remorsefully admits that his involvement in the instant offense was due to poor judgment, financial hardship and his inability to find work that would sufficiently sustain his family.  As noted in the probation report, Mr. Hill currently carries nearly $30,000.00 worth of debt.  See Probation Report ¶ 80.

7. Mr. Hill continues to be a positive influence in the community, coaching youth basketball, among other things.  See § E, *infra*.

8. Concluding this chapter of his life, Mr. Hill continues to help his family despite his conviction in this case and the pending sentence.  Mr. Hill has consistently been a provider for his family and responsible for their well-being.

**SENTENCING FACTORS**

### A. Consideration of the Guidelines

   While the Court is no longer required to impose a
sentence within the Guidelines, the Second Circuit has held
that District Courts must "consider" the Guidelines.  In
"order to fulfill this statutory duty to 'consider' the
Guidelines a sentencing judge will normally have to
determine the applicable Guideline range."  US v. Crosby,
397 F.3d at 111 (2d Cir.2005).  Thus, to decide what
sentence is appropriate for Mr. Hill, the Court must first
calculate the Guideline range for his offense.

   Because the offense of conviction involves a
Conspiracy to Commit Mail/Wire Fraud and Access Device
Fraud, § 2B1.1 of the Sentencing Guidelines applies to this
case.

   In determining the appropriate base offense level, the
sentencing court is required to calculate the defendant's
'relevant conduct' under guidelines §§ 1B1.3(a) and (1)(b).
The scope of the criminal activity jointly undertaken by a
defendant is not necessarily the same as the scope of the
entire conspiracy and hence relevant conduct is not
necessarily the same for every participant.  This has been
interpreted to require the sentencing court make two
particularized findings: (a) That the acts were within the
scope of the defendant's agreement, and (b) That they were
foreseeable to the defendant. See e.g., US v. Hernandez-
Santiago, 92 F.3d 97 (2d Cir.1996); US v. Studley, 47 F.3d
569 (2d Cir.1995).

### B. Offense Level Computation and 18 U.S.C. § 3553(a) Factors

   Although the imposition of a sentence in accordance
with the United States Sentencing Guidelines is not
mandatory, the Guidelines are advisory and the Court is
required to consider any applicable Guideline provisions,
as well as other factors enumerated in 18 U.S.C. § 3553(a),
to arrive at an appropriate sentence in the instant case.

   Section 3553(a) requires that this Court consider the
purposes of sentencing, including punishment, promotion of
public safety, and deterrence.  Under these standards, the

Court may impose a non-guideline sentence in appropriate circumstances.

For the instant offense, there is a statutory maximum sentence of twenty (20) years in prison, with no statutory minimum.  Both the defendant and the United States Department of Probation estimates the likely adjusted offense level under the Guidelines to be level 24, which is predicated on the following Guideline calculation:

**Grouping**: Pursuant to Guidelines § 3D1.2(b), Counts 1 and 2 are grouped together as closely related counts, and pursuant to § 3D1.3(a), the offense level applicable to the group is the highest offense level of any count in that group.

**Base Offense Level**: The Guideline for these offenses is § 2B1.1.  That Guideline provides a base offense level of seven (7) because one of the offenses of conviction has a statutory maximum term of imprisonment of twenty (20) years or more.                                                         **7**

**Adjustment for Loss Amount**: Under Guidelines § 2B1.1(b)(1)(G), a twelve (12) level increase is appropriate because the offense involved more than $200,000.00, but less than $400,000.00 of actual or intended loss.        **12**

**Victim Related Adjustment**: Pursuant to Guidelines § 2B1.1(b)(2)(B), a four-level increase is appropriate because the offense involved more than fifty (50) victims but less than 250.                                             **4**

**Stolen Property Adjustment**: Pursuant to Guidelines § 2B1.1(b)(4), a two-level increase is appropriate because the offenses involved receiving stolen property, and Mr. Hill was as person in the business of receiving and selling stolen property.                                                **2**

**Use of Device-Making Equipment Adjustment**: Pursuant to Guidelines § 2B1.1(b)(11), a two-level increase is appropriate because the offenses involved the possession and use of device-making equipment and authentication features, as well as the production and trafficking of unauthorized access devices and counterfeit access devices or authentication features, as well as the unauthorized transfer and use of any means of identification unlawfully to produce or obtain an other means of identification and

the possession of five or more means of identification that
unlawfully were produced from, or obtained by the use of,
another means of identification.                              **2**

**Adjustment Offense Level (Subtotal):**                     **27**

**Adjustment for Acceptance of Responsibility**: Mr. Hill
pleaded guilty, and the Government intends to make a motion
stating that it was notified in a timely manner by the
defendant of his intention to do so. Per Guidelines § 3E1.1
(a) and § 3E1.1 (b), 3 levels are subtracted.               **-3**

**Total Offense Level**:                                    **24**

### C. The Family Circumstances Departure

In addition to the Guidelines calculations, Mr. Hill
should also be eligible for a Family Circumstances
Departure to reduce his sentence below the Guidelines Range
because his family relies upon Mr. Hill for material
support and health care.  Although The Sentencing
Commission asserts that as a general matter family
responsibilities "are not ordinarily relevant," the Second
Circuit has recognized that a downward departure from the
Guidelines Range is permissible in certain instances.  For
example, in U.S. v. Johnson, 964 F.2d 124, 128 (2d
Cir.1992), the Second Circuit upheld a downward departure
of ten levels based upon the defendant's family
circumstances.  Specifically, in Johnson, the Court held
that the defendant was entitled to a downward departure for
family circumstances because the defendant's two children
and three grandchildren resided with her and relied solely
upon her.  Johnson, *supra* at 126.

Similar to the defendant in Johnson, Mr. Hill should
be given a downward departure from the Guidelines Range
because of his family circumstance.  Although Mr. Hill's
fiancée does assist somewhat with the household bills, Mr.
Hill's fiancée and his three young children are largely
dependent upon him for rent, food, and other household
expenses.  As his fiancée, Dyteer Gallishaw, writes: "[Mr.
Hill] is a tremendous help and provider to our family.
Without him I don't know how we would survive on our own."
Exh. A, Letter from Dyteer Gallishaw to Hon. Laura Taylor
Swain, July 2, 2014.  Specifically, as already noted, Mr.
Hill's family relies upon him to provide for their health

care, as his fiancée and three small children are on Mr. Hill's health insurance.  Relying upon Mr. Hill's health insurance is particularly important in this case because beyond the typical ailments that all young children are prone to suffer from time to time, Naima, Mr. Hill's seven (7) year-old daughter suffers from a skin condition that causes her to break out in rashes and severe itching and requires at least monthly treatments.  The health coverage that Mr. Hill provides his daughter is only one specific instance of the importance Mr. Hill has in his family's life as a provider.  Mr. Hill's family is largely dependent upon him for food and rent as well.

Mr. Hill's important role in his family's life goes well beyond mere material support.  As Ms. Gallishaw writes, Mr. Hill "has been and will continue to be a model father to our daughters.  He takes them to school each morning and assists them with their homework each night." Exh. A., Gallishaw Letter.  Similarly, Mr. Hill's fourteen (14) year-old daughter writes that:

> My father….takes excellent care of my sisters and I.  He takes us to school every morning and helps us with our homework when needed. My dad is very stern in our upbringing and he makes sure we know right from wrong. My sisters and I love my dad very much, and we know that he loves us too. My dad is a great role model in our life. Without my dad in our lives things wouldn't be the same. Exh. B, Letter from Diyanna Hill, July 15, 2014.

Accordingly, Mr. Hill should be eligible for the family circumstances departure based upon his family's reliance upon him for their health and welfare, not to mention the emotional support and guidance he provides to his children.

### D. The Need for the Sentenced Imposed

Under the federal sentencing statute, a sentencing court must impose a sentence "[t]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  In doing so, however, Congress has directed sentencing courts to impose a sentence "not greater than necessary" to achieve these purposes.  18 U.S.C. § 3553(a). It is respectfully submitted that due to how the Sentencing Guidelines calculate loss amount, that the Guidelines Range

in this case leads to a sentence that is "greater than necessary" "to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense."

Specifically, Guidelines § 2B1.1 CMT. 3(F)(i) specifies that in cases involving stolen or fraudulent credit cards, the loss amount is a minimum of $500 per credit card, even if no actual loss accrued.  In this particular case, that Comment to the Guidelines loss calculation provisions serves to nearly double the loss amount for which Mr. Hill is responsible, taking it from an *actual* loss amount of $152,513.30 to a loss amount based on the $500 per card analysis of § 2B1.1 CMT. 3(F)(i) of $301,587.82.  See Probation Report ¶ 33.  Were the lower, actual loss amount used in this case, Mr. Hill's Guidelines Range would be reduced by two (2) points, to 22.  Although we acknowledge that the Guidelines allow for this sort of calculation, it is respectfully submitted that in this particular case, a sentence within that Guidelines range would be "greater than necessary" "[t]o reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" because a sentence within the Guidelines Range in this case would be predicated on nearly double the loss Mr. Hill actually caused.

### E. Mr. Hill's Background and Character

In addition to the family circumstances and that the Guidelines Range overstates the seriousness of the offense in this case, Mr. Hill should be given a below Guidelines Range sentence in this case because of his general good character and background.  Under 18 U.S.C. § 3553(a)(1), a sentencing court should consider a defendant's "history and characteristics" when imposing sentence.

As an initial matter, it should be noted that Mr. Hill is a responsible individual who has held a job with the same company for over eighteen (18) years.  Several co-workers and supervisors have written letters of support in favor of Mr. Hill.  For example, Robert Binyard, a co-worker of Mr. Hill's at Verizon, writes that Mr. Hill is a "great coach" for Mr. Binyard's son and nephew and that Mr. Hill has held three (3) years worth of basketball tournaments for kids in the city.  See Exh. C, Letter from Robert Binyard to Hon. Laura Taylor Swain.  Antonette

Miller, a co-worker of Mr. Hill's for fifteen years, writes that Mr. Hill "has been a very influential, caring and supportive friend to my family….If there was ever a time I needed help on or off the job Mr. Hill was there to assist me." Exh. D, Letter from Antonette Miller to Hon. Laura Taylor Swain, May 24, 2014. Louis Burghi, another co-worker at Verizon who has known Mr. Hill for fifteen (15) years writes that Mr. Hill "has shown great support to my family and I throughout the years….Mr. Hill is a devoted father, a man of integrity and a huge influence to his fiancée, his children and their future." Exh. E, Letter from Louis Burghi to Hon. Laura Taylor Swain, June 19, 2014.

It is not merely co-workers who sing Mr. Hill's praises, but his supervisors as well. Quintin Trammell, one of Mr. Hill's supervisors at Verizon, writes that Mr. Hill's "performance at Verizon has been undying above and beyond his regular daily activities." See Exh. F, Letter from Quintin Trammell to Hon. Laura Taylor Swain, June 25, 2014. Another supervisor at Verizon, Pablo Sinclair, writes that Mr. Hill "has gone above and beyond his duties to provide dedication to Verizon. He is also a team leader and heading toward a supervisory position." Exh. G, Letter from Pablo Sinclair to Hon. Laura Taylor Swain, July 7, 2014.

Beyond work and his family, Mr. Hill has taken affirmative steps to be a positive influence in his community as a whole. Anton Marchand, found of Conrad McRae youth basketball league, writes that Mr. Hill "has been a coach and mentor to hundreds of children who competes [sic] in multi-borough tournaments. Over the past 7 years he has directed many kids to pursue their dreams and aspirations." Exh. H, Letter from Anton Marchand to Hon. Laura Taylor Swain, June 28, 2014.

Mr. Hill's good character extends from his family, his workplace, to helping his friends in their day-to-day lives. For example, Keyowanna Hammonds, Assistant Director of Behavioral Health at "Bridging Access to Care," writes that she has known Mr. Hill for nine (9) years, and that once, after she had "major surgery," Mr. Hill "was on the hospital, despite his busy schedule with work and family; he would visit, bring me food and sit with me until security threw him out." Exh. I, Letter from Keyowanna Hammonds, LCSW, to Hon. Laura Taylor Swain, July 8, 2014.

Along similar lines, Cerice Hill, Mr. Hill's sister, writes
that "Growing up without a father my brother has always
been there for me know [sic] matter the situation or
circumstance.  Aaron is not only concerned with the welfare
of himself, but also that of others."  <u>Exh. J, Letter from
Cerice Hill to Hon. Laura Taylor Swain, July 10, 2014</u>.

## Conclusion

     Mr. Hill respectfully requests that the Court, when
constructing its sentence, consider his family
circumstances-specifically the extent to which his children
rely upon him to provide-overall work history and
character, as well as the possibility that the Guidelines
Range in this sentence is "greater than necessary" "[t]o
reflect the seriousness of the offense, to promote respect
for the law, and to provide just punishment for the
offense" because it would impose a sentence based upon a
loss amount nearly double that actually caused.[1]

     Defendant respectfully reserves the right to raise
additional issues, if necessary, at the time of sentencing.

                              Respectfully Submitted,


                              /s/ Jeffrey Chabrowe
                              Jeffrey Chabrowe, Esq.
                         261 Madison Avenue, 12th Floor
                            New York, New York 10016
                               Phone (212)736.3998
                               Fax: (212)736.3910

---

[1] Again, we acknowledge that the Guidelines allow precisely that.  Our
argument is predicated upon the sentencing statute's-not Guidelines'-
directive that the sentence imposed be no "greater than necessary"
"[t]o reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense"