

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 23, 2014

**BY ECF**

The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, New York 10007

      Re:    <u>**United States** v. **Aaron Hill**</u>,
             **12 Cr. 507 (LTS)**

Dear Judge Swain:

      The Government respectfully submits this letter in response to the defendant's sentencing memorandum, dated July 25, 2014, as amended on September 23, 2014 (the "Defendant's Memorandum" or "Def. Mem."), and in advance of the defendant's sentencing at 10:30 a.m. on September 26, 2014. In his sentencing submission, the defendant contends that he should receive an unspecified, below Guidelines sentence principally for two reasons: (i) that his family circumstances warrant a variance, and (ii) that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") overstate the loss in this case. The Government respectfully submits that sound policy considerations weigh against both arguments as a basis for a variance here, and that – consistent with the recommendation of the Probation Office – the Court should sentence the defendant to a sentence within the recommended Guidelines range of 57 to 71 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to accomplish the legitimate purposes of sentencing, given: (i) the very serious nature and circumstances of the offense, which resulted in the theft of over 400 credit card and debit card account information from more than 85 individual banks and hundreds of individuals; (ii) the history and characteristics of the defendant, including the fact that he committed the instance offense while under a criminal justice sentence (*i.e.*, probation from a prior conviction); and (iii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, protect the public from future crimes of the defendant, and afford adequate deterrence to criminal conduct. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B).

## The Nature and Circumstances of the Offense

      On November 14, 2013, the defendant pled guilty to Counts One and Two of the Indictment, in accordance with a written plea agreement. *See* PSR ¶ 6.[1] Count One charged the

---

[1] "PSR" refers to the Probation Office's Presentence Investigation Report and Addendum, dated May 30, 2014.

defendant with conspiracy to commit wire fraud, in violation of Title 18, United State Code, Section 1343. PSR ¶ 2. Count Two charged the defendant with access device fraud for possessing more than 15 stolen credit and debit card numbers belonging to other individuals without lawful authority to do so, in violation of Title 18, United States Code, Sections 1029(a)(3), 1029(b)(1), and 2. PSR ¶ 3. In consideration of the defendant's pleas of guilty to Counts One and Two of the Indictment, the Government agreed to dismiss Count Three, which charged the defendant with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A, which would have required the imposition of a mandatory two-year sentence to be served consecutive to any sentence imposed on Counts One and Two. PSR ¶ 4.

As described in more detail in the Presentence Investigation Report and the Complaint, *see* Exhibit A, the defendant and his co-conspirators engaged in access device fraud and wire fraud on a massive scale. A review of email correspondence obtained pursuant to a search warrant executed on the defendant's own email account – putting aside the hundreds of additional cards identified in the email inboxes of his co-conspirators – showed that the defendant had purchased account information associated with at least 400 individual credit and debit cards. *See* PSR ¶ 33.

As with his co-defendants, the evidence demonstrated that Hill purchased this vast amount of debit and credit card account information with full knowledge not only that the accounts were active accounts, but also knowing, in many instances, that the accounts were held by actual individuals. *See*, *e.g.*, Exhibit B (selection of emails obtained from defendant Hill's email account, acemaster370@gmail.com). As shown in Exhibit B (which is not being publicly filed because of the extent and nature of the personal information contained therein), the credit card information purchased by Hill included the names, social security numbers, contact information, and even the amounts of money in each account for the individual victims whose identities he and his co-conspirators stole. The effect of this was that Hill and his co-conspirators were not simply using counterfeit credit cards to defraud the business from which they illicitly purchased good – which in and of itself would have been sufficient to justify a Guidelines sentence here given the scope of the defendant's fraud – but also put at risk the livelihood and credit of actual individuals, noting the amount of credit and/or funds available down to the dollar. *See*, *e.g.*, Exhibit B at 1 (providing persona identification numbers (PINs) and noting the "amount inside" each account).

And Hill's criminal conduct was not limited to his dealings with those who have been identified as co-conspirators in this case. The search warrant returns form the defendant's email account – representing a snapshot of the defendant's criminal activity over a period of months – showed that the defendant purchased the stolen credit card information from multiple suppliers and used credit card accounts that spanned not only the United States but also Europe. *See*, *e.g.*, Exhibit B (containing so-called "dumps" of credit card and debit card information from three different suppliers); Exhibit C (containing "dumps" of access device information from a fourth supplier); Exhibit D (containing "dumps" of access device information from a fifth supplier). Moreover, as the defendant conceded at his plea allocution, he not only purchased these stolen access devices for his own use, but he sold them to others. *See* PSR ¶ 36.

As noted above, based on the information obtained from the search warrant on the defendant's email account, the FBI determined that the defendant had purchased credit card

and/or debit card account information related to over 137 individual accounts during an approximately four-month period. PSR ¶ 34. In so doing, the defendant spent over $54,149.49 of other peoples' money, and had hoped to spend hundreds of thousands more before his fraud was detected. PSR ¶ 34.

### History and Characteristics of the Defendant

As the Probation Office notes, this is Hill's second felony conviction. While his first conviction was a narcotics-related felony from 2005, what is telling here is that the defendant committed the instant offenses while under a term of probation for that first conviction. That fact, which also is accounted for in his Criminal History Category, underscores the need for a substantial sentence of imprisonment here as it is illustrative of his willingness to continue to flout the law if given leniency at sentencing.

It bears further noting that, while his criminal history may not be as substantial as that of his co-defendants – and, unlike his co-defendants, Hill has no prior convictions for access device fraud – the scale of the fraud that Hill sought to perpetrate here outstripped his two co-defendants. Indeed, defendant Harvey (who himself possessed 330 access devices) caused actual losses that were less than half of those caused by Hill himself. Similarly, defendant Walker (who possessed 137 access devices) caused approximately one-third of the actual losses caused by Harvey. As such, while the defendant does not have a criminal history that is comparable to his co-defendants, the role that he played in the overall offense appears to be greater both in terms of losses caused and sheer numbers of stolen access devices.

Against this backdrop, the defendant contends that he should be granted leniency because of his "family's reliance upon him for their health and welfare, not to mention the emotional support and guidance he provides to his children." Def. Ltr. at 6. While the Government concedes that the support that Hill provides to his family is admirable, and that his family is a factor that the Court can and should consider in imposing sentence, he does not explain how his family circumstances are different from any other defendant with a family who faces incarceration. Given the magnitude of his crime, and the number of victims, the Government respectfully submits that the family circumstances cited by the defendant do not rise to the level to warrant a variance under the Guidelines.

The need for specific deterrence as to the defendant, the need to promote respect, and the need for just punishment for the offense for the law all strongly underscore the propriety of a Guidelines sentence as to this defendant.

### Guidelines

There is no dispute here that the defendant's Guidelines sentencing range is 57 to 71 months' imprisonment and that the defendant is in Criminal History Category II. *See* Def. Mem. at 3-5 (acknowledging an adjusted offense level of 24); *see also* PSR ¶¶ 52, 56, 83 (calculating a total offense level of 24, a Criminal History Category of II, and a recommended sentencing Guidelines range of 57-71 months, respectively).

Hon. Laura Taylor Swain, U.S.D.J.
September 23, 2014
Page 4

## Restitution & Forfeiture

At sentencing, the Government will request that the Court enter an Order requiring the defendant to pay restitution in the amount of at least $152,513.39 to the 88 individual banks that suffered actual losses as a result of his criminal conduct. In addition, the Government submits that by virtue of the defendant's plea of guilty to a conspiracy, he is jointly and severally liable for the additional losses caused by his co-conspirators. In view of that, and given that the defendant is the last of his charged co-conspirators to be sentenced, the Government respectfully requests that the Court an Order of restitution that accounts for the actual losses caused by each of the defendants to the victim banks, and Order that this defendant be held jointly and severally liable with his co-defendants in repaying those losses.

The Government is working with defense counsel for all three defendants to provide the Court with a proposed, consent Order of restitution. The undersigned continues to work out the details of the proposed Order with defense counsel, and hopes to conclude our discussion regarding its terms by the sentencing. In the event the parties are able to agree on such a proposed Order, the Government respectfully submits that there will be no need for a restitution hearing. Notwithstanding that, the individual victims should be permitted to address the Court at sentencing.

Moreover, in accordance with the defendant's plea agreement and consistent with the Probation Office's recommendation (*see* PSR at 24 (sentencing recommendation)), the Government also will seek forfeiture of the defendant's ill-gotten gains in the amount of $152,513.39. A proposed forfeiture Order is annexed hereto as Exhibit E.

## Discussion

The Probation Office recommends a 57-month term of imprisonment because, among other reasons:

> The instant offense represents the second felony conviction for this 39-year-old defendant, . . . . During the offense, Hill obtained a total of 401 credit card numbers that had been issued by 88 different financial institutions. The actual and intended loss for which Hill is accountable is $152,513.39, and $301,587.82, respectively.
>
> . . .
>
> Pursuant to the sentencing factors of 18 USC 3553(a), including just punishment and adequate deterrence, as well as the circumstances of the offense and the history and characteristics of the offender, we believe that the minimum Guideline term of imprisonment is warranted. The maximum term of supervised release is recommended in light of the defendant's appreciable restitution/forfeiture obligations.

Hon. Laura Taylor Swain, U.S.D.J.
September 23, 2014
Page 5

PSR at 22 (Probation Office sentencing recommendation).

In a word, the defendant's crimes here (and those of his co-conspirators) were egregious, with his own conduct jeopardizing the credit and financial stability of more than 400 people – let alone those put at risk by his co-conspirators. The defendant has demonstrated a total disregard for the law by continuing to engage in such conduct in spite of the fact that he was serving a term of probation for a prior felony violation (albeit, one unrelated to credit card fraud).

The defendant's lengthy criminal history, as well as the relatively serious sentences that he has received as punishment for such conduct, belie the defendant's claim that "the imposition of a one year and one day sentence would meet the standards and goals set forth in 18 U.S.C. § 3553(a)(2)." Def. Mem. at 6. Indeed, such a sentence would be less than, or on par with, the sentences that the defendant has received for very similar crimes that involved far less loss to the retailers and/or individual victims. *See*, *e.g.*, PSR ¶¶ 67-68 (a sentence of one-and-a-half years to three years' imprisonment for using a stolen credit card to purchase $2,600 worth of merchandise); ¶¶ 72-73 (a sentence of one year for using a stolen credit card to purchase $1,281.49). Those prior sentences neither deterred the defendant from engaging again in criminal conduct nor prevented him from doing so on a much grander scale. In the face of this history, the defendant's contention that a sentence of one year and one day could be sufficient under the Guidelines simply does not hold water.

Accordingly, a sentence within the Guidelines range of 57 to 71 months' imprisonment is necessary to ensure that the sentence imposed reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, protects the public from future crimes of this defendant, and affords adequate deterrence to criminal conduct. The deterrence consideration in this case is necessary both specifically as to Hill – given his willingness to flout the criminal justice system by engaging in this serious criminal conduct while on probation – and more generally to others who believe that they can engage in serious, fraud-related offenses that jeopardize the financial well-being of hundreds of individuals.

Hon. Laura Taylor Swain, U.S.D.J.
September 23, 2014
Page 6

## Conclusion

      For all of the foregoing reasons, the Government respectfully submits that a Guidelines sentence is no greater than necessary to take into account the nature and circumstances of the offense (fraud and identity theft on a massive scale), the history and characteristics of the defendant (this represents his third felony conviction for credit card fraud and identity theft, and his fifth overall conviction for these types of offenses), and the need for the sentence imposed to reflect the seriousness of the offense (the defendant himself was found in possession of hundreds of credit card numbers belonging to other individuals), promote respect for the law (the defendant's commission of this felony while under a term of probation for a prior felony conviction), provide just punishment for the offense (as described above, the defendant and his co-conspirators compromised the financial accounts of hundreds of individuals), and afford adequate deterrence to criminal conduct. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B).

                                              Very truly yours,

                                              PREET BHARARA
                                              United States Attorney

                                by:  /s/ Sean S. Buckley
                                              Sean S. Buckley
                                              Assistant United States Attorney
                                              (212) 637-2261

Enclosures

cc: Jeffrey Chabrowe, Esq. (by electronic mail)